**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LAURA A. GARCIA,** | : | |
| **Plaintiff** | : | |
| **v.** | : | **CIVIL ACTION NO. 3:CV-05-2507** |
| **JO ANNE B. BARNHART,** | : | **(CAPUTO, D.J.)** |
| **Commissioner of** | | **(MANNION, M.J.)** |
| **Social Security** | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

The record in this action has been reviewed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence to support the Commissioner's decision denying the Plaintiff's claim for Disability Insurance Benefits, ("DIB"), under Title II of the Social Security Act, ("Act").  42 U.S.C. §§ 401-433.

## I.  PROCEDURAL HISTORY.

The Plaintiff protectively filed an application for DIB on July 22, 2003, alleging disability since December 1, 2002, due to back problems, arthritis, varicose veins, and vision problems.  (TR. 18, 39-41).  The state agency denied her claim initially on September 23, 2003.  (TR. 26-29).  The Plaintiff filed a timely request for a hearing (TR. 30), and a hearing was held before an Administrative Law Judge (ALJ) on January 13, 2005.  (TR.150-169).  The Plaintiff, represented by counsel, testified and a vocational expert testified at the hearing.  (TR. 153-169).  The Plaintiff was denied benefits pursuant to the ALJ's decision of February 2, 2005.  (TR. 11-21).

The Plaintiff filed a request for review of the ALJ's decision. The Appeals Council denied her request on September 23, 2005, thereby making the ALJ's decision the final decision of the Commissioner. (TR. 5-8). 42

U.S.C. § 405(g).  That decision is the subject of this appeal.

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions.  (Doc. Nos. 8 and 9).

## II. STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or

> whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III.  ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520 (2004).  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  20 C.F.R. § 404.1520.

The first step of the process requires the Plaintiff to establish that she has not engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(b). The second step involves an evaluation of whether the Plaintiff has a severe impairment. *See* 20 C.F.R. § 404.1520(c). The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulations No. 4. 20 C.F.R. § 404.1520(d).

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that she is unable to perform her past relevant work.  20 C.F.R. §§404.1520(e)-(f).  The Plaintiff bears the burden of demonstrating an inability to return to her past relevant work.  *Plummer*, 186 F.3d at 428.  Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform,

consistent with her medically determinable impairments, functional limitations, age, education and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c). This is Step Five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors. *Id.*

Here, the ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Act. (TR. 14, 20). At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful work activity since her alleged disability onset date, December 1, 2002. (TR. 15). At step two, the ALJ concluded that the Plaintiff's back problems, arthritis, varicose veins, and vision problems were severe within the meaning of the Regulations. (TR. 18). At step three, the ALJ found that Plaintiff's severe impairments were not severe enough to meet or medically equal, either singly or in combination, the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4. (TR. 18).

At step four, the ALJ found that the Plaintiff was able to perform her past relevant work and a full range of sedentary work. (TR. 19-20). Thus, the ALJ concluded that the Plaintiff was not disabled within the meaning of the Act. (TR. 20). 20 C.F.R. §§ 404.1520(f).

## IV.   BACKGROUND.

### A.   Factual Background.

The Plaintiff, forty-three years old at the time of the ALJ's decision, was considered a younger individual under the Regulations. (TR. 15). 20 C.F.R. §§ 404.1563 and 416.965. She completed high school and attended college, but never received a college degree. (TR. 15, 153-154). Plaintiff worked mainly as a customs entry clerk and a data entry clerk. (TR. 154-156, 167).

The Plaintiff alleges disability since December 1, 2002, due to back problems, arthritis, varicose veins, and vision problems.  The relevant time period for this case is December 1, 2002, the date of onset, through February 2, 2005, the date of the ALJ's decision.  *See* 20 C.F.R. §§ 416.202 and 416.501.

Plaintiff testified that she last worked in January 2002. (TR. 154).  She stated that her only income is her husband's disability payments and food stamps. (TR. 154, 161).  Plaintiff testified that she can no longer work because of the pain in her back.  (TR. 157-158).  She stated that she has to lay down often and the pain radiates down from her lower back to her hips and legs.  (TR. 157-158).   Plaintiff describes the pain as constant pain increasing and decreasing in intensity.  (TR. 158).  The pain is sometimes sharp and stabbing, but other times it is dull.  (TR. 165-166).  Plaintiff never had back surgery.  Plaintiff also testified that she experiences numbness in her feet; pain in her neck, head and shoulders; numbness mostly in her right arm, but sometimes in her left arm; and tingling in her hands. (TR. 166).  Plaintiff believes that her symptoms cause her to be forgetful. (TR. 166).  She also stated that she occasionally experiences pulsing in her eye and headaches.  (TR. 167).

Plaintiff testified that she goes to bed between 8:00 p.m. and 9:00 p.m. and wakes up around 7:00 a.m. or 8:00 a.m.  (TR. 160, 163).  When she awakens, she stays in bed and watches television for about a half an hour then goes back to sleep. (TR. 160-161).  Plaintiff stated that she will then sleep until about 9:30 a.m., when her husband brings her breakfast in bed. (TR. 161). The ALJ asked the Plaintiff what she does next, and the Plaintiff responded, "I guess I go back to sleep again."  (TR. 161).  She stated that her medications cause her to sleep a lot.  (TR. 161).  Plaintiff testified that

she sometimes gets out of bed for thirty to forty-five minutes to sit in a recliner. (TR. 161-162). She sometimes travels three miles to her mother's house. (TR. 162). Plaintiff occasionally drives, sometimes helps her children with homework, and does not cook dinner. (TR. 162). Plaintiff's husband has to help her bathe and dress. (TR. 166-167).

Plaintiff testified that she can sit for thirty minutes without pain, stand for fifteen to twenty minutes, walk for less than half a block, and lift five pounds. (TR. 165). Plaintiff takes Oxycodone (twice a day), Flexeril (once a day), and Zoloft (once a day). (TR. 158-159). Plaintiff stated that the medications make her drowsy, nauseous and dizzy. (TR. 166). She also indicated that the Zoloft helps control her depression. (TR. 159).

A vocational expert, Frances Terry, testified at the ALJ hearing. (TR. 167-169). The VE testified that, according to the Dictionary of Occupational Titles, ("DOT"), Plaintiff's work as a data entry clerk was classified as semi-skilled work in the sedentary level. (TR. 167-168). Plaintiff's work as a customs clerk was classified as semi-skilled to skilled work in the sedentary level. (TR. 167). The VE defined sedentary work as "lifting not more than 10 pounds on an occasional basis and being able to change positions sitting and standing as needed." (TR. 168).

The ALJ specifically asked the VE, if he were to find that Plaintiff could perform sedentary work, would she be able to return to her past work as a data entry clerk and customs clerk. (TR. 168). The VE responded that she would be able to return to those jobs. (TR. 168). The ALJ stated if he were to accept Plaintiff's testimony as presented, could she return to her past work. (TR. 168). The VE responded that her symptoms as described would negatively impact her ability to return to competitive employment. (TR. 168).

6

### B. Medical Background.

Plaintiff began treating with Raphael Cilento, M.D., Ph.D., F.R.C.S., F.I.C.S., in 2001.  (TR. 102-103).  On July 24, 2003, Dr. Cilento noted that Plaintiff suffers from a right eye strabismus operation in 1971, a walking impairment from hip and knee arthritis[1], lumbar spine derangement with radiculopathy, and varicose veins.  (TR. 102).

Dr. Cilento completed a Spinal Impairment Questionnaire on November 26, 2003, diagnosing cervical spine derangement with radiculopathy; cervical spine intervertebral disc lesion; lumbosacral spine derangement with radiculopathy; lumbosacral spine intervertebral disc lesion; internal derangement of both hips and knees; left eye dysfunction; and a badly healed Caesarean Section incision.  (TR. 110).  He found that Plaintiff's cervical and lumbar spines were limited with regard to range of motion, tenderness, muscle spasm, sensory loss, reflex changes, muscle atrophy, and muscle weakness.  (TR. 103-104).  Dr. Cilento found that Plaintiff had an abnormal/antalgic gait due to arthritic changes in her knees and hips.  (TR. 104).  She had swelling in her left knee and left ankle; crepitus in the left shoulder; myofasciitis all over her back; and a positive straight leg raising test.  (TR. 104).  Dr. Cilento opined that Plaintiff's pain is severe, constant, gets worse in bad weather, and she is depressed from her spinal injury.  (TR. 105-106).

Dr. Cilento opined that Plaintiff could sit and stand/walk for up to one hour in an eight-hour day; Plaintiff could not sit and stand/walk continuously

---

[1]

We note that when Dr. Cilento reviewed Plaintiff's March 19, 2004 x-rays of the cervical, dorsal and lumbar spines he found there is "no generalized arthritis or arthritic disease."  (TR. 98) (emphasis in original).

and she should get up and move around as tolerated.  (TR. 106).  Dr. Cilento found that Plaintiff could occasionally lift and carry five to ten pounds, noting that she has a newborn baby.  (TR. 106).  Dr. Cilento found that Plaintiff had psychological limitations, limited vision, and she would have to avoid wetness, noise, fumes, gases, temperature extremes, humidity, dust and heights.  (TR. 109).  He found that Plaintiff could not push, pull, kneel, bend, stoop, walk or sit.  (TR. 109).  Dr. Cilento ultimately found that Plaintiff is totally disabled and will need spinal fusion and possible hip and knee replacement.  (TR. 107).

Mordecai Zucker, M.D., examined Plaintiff and wrote a "To Whom It May Concern" letter on July 20, 2003 (TR. 87-88). The letter stated that Plaintiff suffers from chronic low back derangement, arthritic pain in major joints (hips and knees), and varicose veins.  (TR. 87).  Dr. Zucker noted that at the time of examination Plaintiff was six months pregnant, thereby complicating her conditions. (TR. 87).

On March 19, 2004, Plaintiff underwent an MRI of the lumbar spine. (TR. 97).  The MRI revealed disc space desiccation at L4-5; degenerative change involving the anterior-inferior end-plate of L4; no vertebral collapse or marrow edema; and a small central protrusion of disc material in the midline at L3-4 with slight mass-effect on the anterior aspect of the thecal sac. (TR. 97). Dr. Cilento reviewed this MRI and did not agree with the findings of the radiologist. (TR. 97). He noted, "[t]hese films are fairly adequate technically but the conclusions are not in accord with the incontrovertible clinical findings."  (TR. 97).  Plaintiff also underwent x-rays of the lumbar, cervical and dorsal spines on March 19, 2004.  (TR. 98).  The x-rays of the lumbar, cervical and dorsal spines all revealed degenerative changes and no canal stenosis at any of the visualized axial levels.  (TR. 98-

99).

Plaintiff underwent a consultative examination performed by Sylvan Brown, M.D., on June 3, 2004. (TR. 116-118). Dr. Brown found that Plaintiff suffered from disc disease of the lumbar and cervical spines with chronic cervical and lumbar pain, and her symptoms were aggravated by obesity. (TR. 117). On physical examination, Dr. Brown noted that Plaintiff was 5'5" and weighed 284 pounds. (TR. 117). She had a slow gait but ambulated independently without an assistive device. (TR. 117). Plaintiff had pain on motion in her cervical spine and shoulders but no significant loss of motion. (TR. 117). Her lumbar spine was limited to 40° of flexion with pain, and extension was painful at 10°. (TR. 117). Plaintiff's strength was ok; she had no significant widespread tenderness; a straight leg raising test was negative; her strength in the lower extremities was hard to assess; Achilles reflexes were present and symmetric; patella, bicep and tricep reflexes absent; and she experienced pain getting on and off the exam table and maneuvering on the exam table. (TR. 117).

Dr. Brown found that Plaintiff could sit for four hours with frequent breaks; stand/walk less than one hour; she would be limited in bending; she could lift and carry up to ten pounds; and she would have to avoid heights, extreme humidity, climbing, stooping, kneeling, balancing, crouching, crawling, pushing and pulling. (TR. 117).

Plaintiff was evaluated by Leo E. Batash, M.D., on January 5, 2005. (TR. 120-125). Dr. Batash concluded that Plaintiff suffered from a cervical sprain/radiculitis with chronic pain; a lumbosacral sprain/radiculitis with L2-3 disc herniation; and depression. (TR. 123). On physical examination, Dr. Batash noted that Plaintiff was 5'5" and weighed 280 pounds. (TR. 121). Plaintiff walked with a cane, was unable to tip-toe and heel walk, or squat,

her cervical spine revealed no scoliosis, her neck was non-supple with pain and tenderness, and she had limited range of motion of the cervical spine. (TR. 121).  Plaintiff's lumbar spine had a normal lordotic curve and midline spine with pain, tenderness and muscle spasm over the lumbosacral spinal and paraspinal muscles at L2-L5 and S1 and limited range of motion.  (TR. 121).  A straight leg raising test was limited at 5° for the lower right extremity, 10° for the left lower extremity, and 0° bilaterally.  (TR. 121).  Dr. Batash found that deep tendon reflexes of the upper and lower extremities were equal and symmetrical, except for the right knee jerk that was 1+.  (TR. 121). Sensation to pinprick was decreased for the right C6-7-8 and right L4, S1 dermatomes. (TR. 121).

Subsequent to the ALJ's decision of February 2, 2005, Plaintiff submitted additional evidence to the Appeals Council.  This included a Spinal Impairment Questionnaire and report by Dr. Batash, an attorney's letter, progress notes from Dr. Batash, and an MRI of Plaintiff's knees.  (TR. 8).

Dr. Batash completed a Spinal Impairment Questionnaire on April 6, 2005.  (TR. 127-133).  Dr. Batash diagnosed Plaintiff with a cervical sprain/radiculitis with chronic pain; a lumbosacral sprain/radiculitis with L2-3 disc herniation; depression; right knee meniscus tears; left knee internal derangement; and right inguinal hernia.  (TR. 127).  Dr. Batash noted that he only had Plaintiff on a home exercise program. (TR. 127). He found that Plaintiff's cervical and lumbar spines were limited with regard to range of motion, tenderness, muscle spasm, sensory loss, reflex changes, and muscle weakness. (TR. 127-128). Dr. Batash found that Plaintiff had an abnormal gait.  She was ambulatory on surface level with a cane, she had an antalgic gait, limped on the right side, was unable to tip-toe, heel walk or squat.  (TR. 128).  Plaintiff had some swelling over both knees, but greater

on the right.  (TR. 128).  She had some crepitus upon extending both knees, but greater on the right; trigger points over the cervical and lumbar spines and paraspinal muscles. (TR. 128). Plaintiff had a positive straight leg raising test.  (TR. 128).

Dr. Batash opined that Plaintiff could sit and stand/walk for two hours in an eight-hour day. (TR. 130). Plaintiff would not be able to sit or stand/walk continuously, she would have to get up and move around every ten to fifteen minutes, then return to sitting in ten or fifteen minutes.  (TR. 130).  He believed that Plaintiff would need to take unscheduled breaks every ten minutes for ten to fifteen minutes; she would be absent from work more than three times per month; and he opined that her impairments would last at least twelve months. (TR. 131-132). Dr. Batash opined that Plaintiff could occasionally lift and carry up to five pounds. (TR. 130-131). Dr. Batash found that Plaintiff had psychological limitations; she would have to avoid wetness, temperature extremes, humidity, and heights; she could not push, pull, kneel, bend, stoop, lift or carry heavy objects; she could not sit, stand or walk for a prolonged period of time; she could not use stairs; she should avoid walking without a cane; and cold weather and rainy days would exacerbate her condition. (TR. 133).  Dr. Batash ultimately concluded that Plaintiff was totally disabled and unable to perform any gainful duties presently.  (TR. 133).

The letter from Attorney Charles E. Binder, dated June 9, 2005, summarized Plaintiff's arguments. (TR. 141-144).  The February 23, 2005 MRI of Plaintiff's knees revealed a small amount of joint effusion, greater on the left; a small posterior fluid filled Baker's cyst on the left; a small linear horizontal tear in the posterior horn of the medial meniscus on the right; no meniscal tear on the left; narrowing of the lateral patellofemoral joint space, greater on the left; inhomogeneous marrow signal mainly in the distal femur

(possibly related to exogenous factors); and no marrow edema.  (TR. 148-149).

### C. State-agency physician's report.

A state-agency physician reviewed Plaintiff's records on August 29, 2005 and completed a Residual Functional Capacity (RFC) Assessment. (TR. 89-96).  The doctor's primary diagnosis was arthritis, the secondary diagnosis was varicose veins, and other alleged impairments were lower back and hip pain, and pregnancy.  (TR. 89).  The doctor found that Plaintiff could perform a full range of light work. However, we note that the ALJ reduced Plaintiff's RFC to a significant range of sedentary work. The DDS physician found that Plaintiff could occasionally lift up to twenty pounds; frequently lift and/or carry up to ten pounds; stand and/or walk and sit, with normal breaks, about six hours in an eight-hour workday; and push and/or pull unlimitedly. (TR. 90). The doctor found there were no manipulative limitations, no visual limitations, no communicative limitations, and no environmental limitations. (TR. 91-93).  The doctor noted that Plaintiff had a positive straight leg raising test, the right greater than the left.  (TR. 91).  The doctor noted that the treating physician stated that Plaintiff is unable to work for twelve months, however the DDS physician stated such an opinion is reserved for the Commissioner. (TR. 95). The doctor ultimately found Plaintiff only partially credible.  (TR. 94).

## V.  DISCUSSION.

The Plaintiff contends that the ALJ erred in: (1) failing to properly evaluate the medical evidence; and (2) failing to properly evaluate Plaintiff's subjective complaints.  (Doc. 8 at 12).

**A.   Whether the ALJ erred in failing to properly evaluate the medical evidence.**

The Plaintiff argues that the ALJ did not properly evaluate the medical evidence in her case.  Plaintiff specifically argues that the ALJ erred in rejecting Dr. Cilento's and Dr. Batash's opinions, and failing to state what weight he gave Dr. Brown's opinion.  (Doc. 8 at 13-15).  The Third Circuit set forth the standard for evaluating the opinion of a treating physician in the case of *Morales v. Apfel*, 225 F.3d 310  (3d Cir. 2000).  The Court stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999)] (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones*, 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster*, 786 F.2d at 585. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)).  The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48.  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988);  *Kent v. Schweiker*, 710 F.2d 110, 115.

*Id*. at 317-18.

The ALJ is required to evaluate every medical opinion received.  20 C.F.R. § 404.1527(d).  Although he must consider all medical opinions, the better an explanation a source provides for an opinion, particularly through medical signs and laboratory findings, the more weight [the ALJ] will give that opinion.  20 C.F.R. § 404.1527(d)(3).  While treating physicians' opinions may be given more weight, there must be relevant evidence to support the opinion.  20 C.F.R. § 404.1527(d). Automatic adoption of the opinion of the treating physician is not required.  *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

"The only reasons for an ALJ to reject a treating physician's opinion are 'on the basis of contradictory medical evidence,' or if the opinion is unsupported by medical data." *Kurilla v. Barnhart,* 2005 WL 2704887, at *5 (E.D.P.A. Oct. 18, 2005) (quoting *Plummer,* 186 F.3d at 429 and citing *Newhouse v. Heckler,* 753 F.2d 283 (3d Cir.1985)).  The ALJ rejected the opinions of treating physician Dr. Cilento because he found them "inconsistent with the weight of the documentary medical evidence and not supported by specific reference to clinical observations or diagnostic test results." (TR. 18-19).  The ALJ noted that Dr. Cilento expressed the opinion that Plaintiff was totally permanently disabled, however Dr. Cilento "did not refer to specific diagnostic test results or clinical observations in support of his assessments." (TR. 17).

On March 19, 2004, Plaintiff underwent an MRI of the lumbar spine and x-rays of the lumbar, cervical and dorsal spines. (TR. 97-98).  The MRI revealed disc space desiccation at L4-5; degenerative change involving the anterior-inferior end-plate of L4; no vertebral collapse or marrow edema; and a small central protrusion of disc material in the midline at L3-4 with slight

mass-effect on the anterior aspect of the thecal sac.  (TR. 97).  We note that Dr. Cilento reviewed this MRI, but did not agree with the findings of the radiologist.  (TR. 97).  He noted, "[t]hese films are fairly adequate technically but the conclusions are not in accord with the incontrovertible clinical findings."  (TR. 97).  The x-rays of the lumbar, cervical and dorsal spines all revealed degenerative changes and no canal stenosis at any of the visualized axial levels. (TR. 98-99). The February 23, 2005 MRI of Plaintiff's knees, submitted subsequent to the ALJ hearing, revealed a small amount of joint effusion, greater on the left; a small posterior fluid filled Baker's cyst on the left; a small linear horizontal tear in the posterior horn of the medial meniscus on the right; no meniscal tear on the left; narrowing of the lateral patellofemoral joint space, greater on the left; inhomogeneous marrow signal mainly in the distal femur (possibly related to exogenous factors); and no marrow edema.  (TR. 148-149).

Dr. Cilento completed a Spinal Impairment Questionnaire for Plaintiff's attorney on November 26, 2003. (TR. 103-110). Dr. Cilento concluded that Plaintiff was totally permanently disabled. (TR. 103). Dr. Cilento advises, "it must be understood that the <u>sole</u> nerve supply of the spine is autonomic which means <u>inevitably</u> <u>severe</u> <u>depression</u> due to the autonomic nerves entering the brain into the limbic system which is the basic emotional key - hence depression + [plus] by federal guidelines if there are <u>five</u> problems which [would] cause permanent disability under the fed guidelines the SSD is automatically <u>immediately</u> <u>achieved </u>since the date of onset of disability." (TR. 103) (emphasis in original).  We note that a medical source's opinion as to the ultimate conclusion of disability is not dispositive because opinions of disability are reserved to the Commissioner. 20 C.F.R. §416.927(e)(1) (2004).  Further, "[a] statement by a medical source that you are 'disabled'

15

or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 416.927(e)(1) (2004). Thus, it is the Commissioner's responsibility to weigh the evidence of record and make a determination as to Plaintiff's disability.

The Spinal Impairment Questionnaire asked whether Dr. Cilento has been able to completely relieve Plaintiff's pain with medication without unacceptable side effects, Dr. Cilento responded, no, "[t]his is a stupid question." (TR. 106). When later asked if Dr. Cilento has substituted medications in an attempt to produce less symptomatology or relieve side effects, Dr. Cilento failed to answer and responded, "another stupid question." (TR. 107). When asked to list Plaintiff's medications Dr. Cilento answered "N/A", however Plaintiff testified that she takes Oxycodone, Flexeril and Zoloft. (TR. 107, 158-159). Dr. Cilento was asked whether Plaintiff would be required to take unscheduled breaks during an eight-hour day, and if so, how often and for how long. (TR. 108). Dr. Cilento simply replied, Plaintiff "will never work again." (TR. 108). Dr. Cilento failed to even opine as to whether Plaintiff would require unscheduled breaks. Dr. Cilento also failed to opine as to how many days per month Plaintiff would be absent from work due to her impairments. (TR. 108).

When questioned whether Plaintiff's impairments would produce "good days" and "bad days," Dr. Cilento responded, no, "all bad days." (TR. 108). However, Plaintiff testified that her pain varies in intensity; some days the pain is intense, but otherwise the pain is dull. (TR. 158, 165-166).

We note that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best," *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993), however an ALJ may not reject treating physicians' opinions on the basis of his own credibility judgment. *Plummer*,

16

186 F.3d at 429. Before rejecting the treating physicians' opinions, the ALJ should point to contradictory medical evidence or flush out how the medical evidence supports the opinions contained in the forms. *See Kurilla,* 2005 WL 2704887 at *5. Here, the ALJ stated: "there is no objective medical evidence in the file to support claimant's allegation of disability." (TR. 16). He bolstered this finding by addressing the medical records and opinions of record. (TR. 16).

The ALJ also found that the opinion of examining physician Dr. Batash was not entitled to controlling weight "because his opinions are loosely based on prior documentary records" and did not refer to particular clinical or diagnostic test results which support his conclusion. (TR. 18). Dr. Batash also completed a Spinal Impairment Questionnaire on April 6, 2005. (TR. 127-133). Dr. Batash opined that Plaintiff was totally permanently disabled, however when questioned as to her frequency of treatment, he stated Plaintiff was "just [on a] home exercise program." (TR. 127). The ALJ noted, "the opinion expressed by Dr. Batash is worthy of consideration, but is not significantly persuasive and is not dispositive." (TR. 18). It appears that the ALJ sustained his burden by pointing to contradictory medical evidence.

Dr. Brown performed a consultative examination of Plaintiff on June 3, 2004. (TR. 116-118). As previously stated, Dr. Brown found that Plaintiff could sit for four hours with frequent breaks; stand/walk less than one hour; she would be limited in bending; she could lift and carry up to ten pounds; and she would have to avoid heights, extreme humidity, climbing, stooping, kneeling, balancing, crouching, crawling, pushing and pulling. (TR. 117).

The ALJ referenced Dr. Brown's opinion, though he does not state whether he credits or discredits this opinion. It may be inferred that Plaintiff considered Dr. Brown's opinion in reaching his conclusion that Plaintiff was

not disabled. The ALJ stated that he reviewed *all* of the evidence of record and *all* medical opinions. (TR. 14, 18) (emphasis added). A line-by-line quotation of a medical report is not required. *Cotter v. Harris*, in describing what the ALJ should include in his decision, noted that "the ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." 650 F.2d 481, 482 (3d Cir. 1981). What is required is that the ALJ "indicate that he has considered all the evidence, both for and against the claim, and provide some explanation of why he has rejected probative evidence which would have suggested a contrary disposition." *Id.* It appears that the ALJ sustained his burden by adequately considering all of the evidence of record.

The ALJ noted that he "accepts, and adopts the Residual Functional Capacity Assessment made by the medical consultant to the Disability Determination Service (DDS)," to the extent that the Plaintiff can perform a full range of sedentary work "because the assessment is consistent with and supported by the great weight of the documentary medical evidence." (TR. 19). The DDS medical consultant was a non-treating, non-examining physician who reviewed Dr. Cilento's notes and used them to come to a different medical conclusion than Dr. Cilento, a treating, examining physician. (TR. 95). The Third Circuit has held that when a conflict exists between the opinions of a treating physician and a non-treating/non-examining physician, the ALJ can credit either, but "cannot reject evidence for no reason or for the wrong reason." *Mason,* 994 F.2d at 1067. Moreover, "[t]he ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." *Plummer,* 186 F.3d at 429. As noted above there is sufficient reason in the ALJ's decision for rejecting the opinions of the treating and examining physicians regarding the Plaintiff's residual functional capacity.

Accordingly, it appears that the ALJ properly evaluated the medical evidence.

### B. Whether the ALJ erred in failing to properly evaluate Plaintiff's subjective complaints.

The Plaintiff argues that the ALJ erred in finding that the Plaintiff was not fully credible. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir.1997); *see also Casias v. Secretary of Health & Human Servs*., 933 F.2d 799, 801 (10th Cir.1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.") *Frazier v. Apfel*, 2000 WL 288246 (E.D.P.A. 2000).

At the same time, "[a]n ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985). Where in fact "medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." *Mason*, 994 F.2d at 1067-68 (citing *Carter v. Railroad Retirement Bd.,* 834 F.2d 62, 65 (3d Cir. 1987); *Ferguson,* 765 F.2d at 37).

Here, the ALJ found the Plaintiff's allegations concerning her pain and symptoms were "overstated, not fully credible, not fully supported by the documentary medical record, and not worthy of total acceptance." (TR. 19). Upon physical examination by Dr. Brown on June 3, 2004, he noted that Plaintiff had a slow gait but ambulated independently without an assistive device. (TR. 117). Plaintiff had pain on motion in her cervical spine and

shoulders but no significant loss of motion.  (TR. 117).  Plaintiff's strength was ok; she had no significant widespread tenderness; and a straight leg raising test was negative. (TR. 117).  Plaintiff had no loss of motion in her hips and knees and no effusions. (TR. 117).  The ALJ evaluated Plaintiff's subjective complaints along with the objective medical evidence.

The ALJ ultimately found the Plaintiff's "allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision." (TR. 20). Although the Plaintiff argues that there are no "reasons set forth" in the decision (Doc. 8 at 17, fn. 9), the ALJ summarized Plaintiff's testimony at the hearing regarding her subjective allegations of pain, all of Plaintiff's daily activities, and her subjective complaints to doctors. (TR. 16-18). The ALJ specifically states that he considered "all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529, and Social Security Ruling 96-7p." (TR. 18).

The Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered.  20 C.F.R. §404.1529. First, symptoms, such as pain, shortness of breath, fatigue, *et cetera,* will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings.  20 C.F.R. §404.1529(b).   Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work.  20 C.F.R. §404.1529(b).  In so doing, the medical evidence of record is considered along with the claimant's

20

statements. 20 C.F.R. §404.1529(b). Social Security Ruling 96-7p gives the following instructions in evaluating the credibility of the claimant's statements regarding her symptoms: "In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p.

It appears that the ALJ adequately considered all of the evidence in the record, including Plaintiff's subjective complaints when coming to the conclusion that the Plaintiff was not fully credible.

## VI.  RECOMMENDATION.

Based on the foregoing, it is recommended that the Plaintiff's appeal be **DENIED**.


s/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States Magistrate Judge**


**Dated:** January 16, 2007
O:\shared\REPORTS\2005 Reports\05-2507.01.wpd


21